A. N. McQuown v. Commissioner. Virginia McQuown v. Commissioner.
A. N. McQuown v. Commissioner
Docket Nos. 35310, 35311.
United States Tax Court
1953 Tax Ct. Memo LEXIS 217; 12 T.C.M. (CCH) 654; T.C.M. (RIA) 53204; June 9, 1953
*217 Robert Mueller, Esq., 605 Perry Brooks Building, Austin, Tex., for the petitioners. Frank C. Allen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings were consolidated for hearing and involve deficiencies in income tax for 1943, $8,172.81 in Docket No. 35310 and $8,436.45 in Docket No. 35311. The issues are whether certain rental income is taxable to petitioners and whether petitioners' allocation of the purchase price of a ranch to the improvements thereon was correct. Findings of Fact The petitioners are husband and wife and reside in Austin, Texas. They filed their returns for 1943 on the community property basis with the collector of internal revenue for the first district of Texas. The husband will be referred to hereinafter for convenience as the petitioner. Petitioner was a member of a partnership engaged in highway construction work until about the close of 1940, when the partnership was dissolved and some of its equipment was distributed to him. He was in a like business in 1941 for his own account. The equipment was community property of petitioners. During the latter part of 1941, or the *218 early part of 1942, as of January 1, 1942, petitioners, after discussion of the matter with their tax consultant and family, gave to each of their three children, John, Kathleen and Albert, an undivided one-fifth interest in the equipment. John and Kathleen were of age and Albert was 12 or 13 years old at the time of the gift. On advice of the tax consultant that no report of the gifts was required by law because the amount to each donee was less than $4,000, no gift tax returns were filed for the gifts. The transfers were recorded in the books of petitioner a few days after the gift was made. Petitioner was empowered by the co-owners to rent the equipment for their account. During 1942 and 1943 the equipment was rented to petitioner and to five or six other contractors. The amount of rental paid by them was in accordance with schedules published by the Federal Government. The amounts so paid were deposited in a bank account under the exclusive control of petitioner. At times there were discussions among or between some of the co-owners concerning the rental of the equipment. A record, separate from that of his other business interests, was kept by petitioner of the rentals received *219 for use and expenses of the equipment, and at the close of the year one-fifth of the net amount was credited to each co-owner. The books kept for the equipment were checked each year by John. The rentals, $53,252.69 in 1942 and $26,693.52 in 1943, were reported in a partnership form of return under the name of A. N. McQuown & Company, and the petitioners and their three children were listed therein as equal distributees of the net income. The distributees included their shares in individual returns and paid the resulting tax. About December 12, 1942, petitioner agreed to purchase a ranch in Burnet County, Texas, for $20,000 and a brokerage fee of $1,000. The property consisted of 3,487 acres of land improved by three houses, two barns, four small buildings, three stock sheds, four wells with equipment for a water and irrigation system, and 23.4 miles of fencing, of which 17 miles was woven wire and the remainder barbed wire. The intention of petitioner at that time was to extend to his wife and children the right to become the actual purchasers. At a meeting of the family during the Christmas season, the same month, the group agreed to make a joint purchase of the ranch. A deed *220 for the property was executed on December 28, 1942, in which petitioners, John and Kathleen were designated as grantees. The other son, Albert, was not named as a grantee because of his minority at that time. The total purchase price of $21,000 was paid out of funds received for rental of the equipment. Bonds, payable to bearer, were purchased for Albert in lieu of an interest in the ranch. In March 1951, a month after Albert became of age, the grantees conveyed an undivided one-fifth interest in the property to him. The owners of the ranch, husband and wife, were involved in divorce proceedings and were anxious to sell the property. The amount for which it was sold was a bargain price. A few days after petitioner agreed to buy the ranch he received an offer of $5,000 for his contract to purchase, and two months after the transaction was closed the co-owners received an offer of $35,000 for the property. In December 1943 petitioners and their three children purchased for $13,500 cash a parcel of improved real estate in Austin, Texas. The name of Albert was omitted from the deed of conveyance because of his minority. Funds derived from rental of the equipment were used to pay for *221 the property. In March 1951 the grantees conveyed an undivided one-fifth interest in the property to Albert. In his determination of the deficiencies respondent included in the income of each petitioner as community income one-half of the net income of A. N. McQuown & Company. Depreciation on the improvements on the ranch was claimed in the partnership return for 1943 and adjusted by respondent on the basis of a useful life of 20 years and costs as follows: Return
Adjusted
Houses
$ 4,500
$2,100
Fences
6,500
3,000
Barns and sheds
3,500
1,650
Water system
2,500
1,200
Total
$17,000
$7,950
Of the consideration paid for the ranch, $6,300 was the cost of the land, a like amount the cost of the fences, and $8,400 the cost of other improvements. Opinion There is agreement on the amount of taxable rental income received. The issue relates to whom the agreed amount should be taxed. It was returned as profits earned by A. N. McQuown & Company, operating as a partnership, in which petitioners and their three children had equal interests. Respondent did not recognize the partnership and taxed all of the profits to petitioners as community income. Petitioners *222 argue that the income was earned from the leasing of property owned by them and their children as tenants in common, an ownership they contend was created by gifts they made to their children of equal undivided interests with them in the equipment. The fact that the arrangement for leasing the property was designated as a partnership is not relied upon by respondent as a controlling factor. The decisive point, he says, is whether petitioners made gifts to their children of undivided interests in the equipment, because of the rule that income from property is taxable to the owner of the property. We agree. Concerning the requirements of a gift the court said in : "* * * Ordinarily, the essential elements of a completed and effective gift for income tax purposes are a donor competent to make the gift, a clear and unmistakable intention on the part of the donor to make it, a donee capable of accepting the gift, a conveyance or transfer sufficient to vest legal title in the donee, without power of revocation at the will of the donor, and delivery to the donee of the corpus of the gift or of the most effectual means of commanding *223 dominion of it. In order to be effective as a gift, the donor must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all incidences of ownership. ; ; ." The petitioners were competent to make the gifts and their intent to do so is evident not only from McQuown's testimony at the hearing herein, but from subsequent acts consistent with such an intention. The donees were capable of accepting the gifts, even though one was a minor at the time. There was no written transfer of the property, but promptly thereafter petitioner made entries in books opened to keep account of financial transactions involving the assets and thereafter recorded in the books the income flowing from renting the property. The subject of the gifts was road-building machinery, the nature of which was such that physical delivery was not practicable. Obviously, there was constructive delivery, for the donees exercise dominion *224 and control by designating petitioner to lease the property. The appointment of petitioner, a donor, to manage the equipment was not fatal. Petitioner testified that the gifts were made without restrictions or reservations. The without restrictions or reservations. The course of conduct after the gifts were made is consistent with a view that the donors did not reserve powers of revocation or other authority contrary to a completed gift. That the transfers were not a sham for the sole purpose of avoiding income taxes by spreading colorable liability among members of a family group is demonstrated not only by the completeness of the gifts, but by use of returns on the property for the joint purchase of realty by the donorsdonees as owners in common. Petitioner, as agent for the owners, exercised control over the rental of the equipment and collected the income. But the important factors are the right of control and to the income. . The management here was with the consent and for the benefit of the co-owners. Petitioners having made unqualified gifts of three-fifths of their interest in *225 the property in equal amounts to their children, they were not taxable on more than what they derived from the two-fifths interest they retained in the equipment. Accordingly, it was error for respondent to tax them on the basis of a greater ownership in the assets. The disagreement of the parties under the second issue is the amount of cost of the ranch allocable to the improvements. Depreciation was claimed on the basis of cost of $17,000, leaving only $4,000 as cost of the 3,487 acres of land. Respondent reduced the cost basis to $7,950 for reasons not disclosed by the record. The amount claimed by petitioners represents their estimation of the value of the improvements at the time of acquisition of the ranch. The depreciation to which petitioners are entitled must be based, not on the value of the property at the time of acquisition but the cost thereof. Petitioners admit that the property was purchased for a bargain price. That it was is shown by the offer of $35,000 petitioner received a few months later. The amount offered is more representative of the actual value of the ranch than the price for which it was sold. Using petitioners' figure of $17,000 as the value of the *226 improvements, the land had a value of $18,000, based upon $35,000 as the fair market value of the entire ranch. Applying such ratios to actual cost, results in a cost of $10,200 for the improvements and $10,800 for the land. Depreciation will be recomputed on that basis. Decisions will be entered under Rule 50.